UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-14056-CR-ROSENBERG/MAYNARD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSE ANTONIO MORALES,

    Defendant.

_____/

REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO SUPPRESS [D.E. 26]

**THIS CAUSE** comes before the Court upon Defendant's Motion to Suppress [D.E. 26]. The government has responded [D.E. 29]. On January 7, 2019, this Court held a hearing to allow legal argument from counsel [D.E. 34].[1] After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant's motion should be denied.

## BACKGROUND

On May 15, 2018 and May 18, 2018, detectives from the St. Lucie County Sheriff's Office (SLCSO) conducted trash pulls at 809 S. Lake Drive in Fort Pierce, Florida, which is the residence of Defendant Jose Antonio Morales. A trash pull is an undercover investigative technique in which the police search a person's trash that has been placed at or near the street for garbage pickup.

---

[1] Based on the legal arguments made, this Court allowed limited testimony as to discrete factual issues that were raised. This Court did not, however, hold a full *Franks* hearing by allowing inquiry into the truthfulness of statements made in the affidavit because Defendant failed to make a substantial preliminary showing warranting such an inquiry.

1

On June 1, 2018, SLCSO Detective Bryan Saliba presented a search warrant application and affidavit to a judge in St. Lucie County requesting a warrant to search Defendant's residence. The affidavit contained the following facts: (1) the affiant, Det. Saliba, is a member of the SLCSO Special Investigations Unit and has extensive experience conducting narcotics investigations; (2) detectives conducted trash pulls at 809 S. Lake Drive in Fort Pierce on May 15 and May 18, 2018; (3) on both dates, the trash can was located "adjacent to the roadway" at the northwest corner of the property; (4) detectives found a plastic baggie containing raw marijuana in the trash can on May 15th; (5) detectives found "multiple burnt marijuana blunts" and "multiple cut vacuum sealed plastic bags" in the trash can on May 18th; (6) one of the plastic bags found on May 18th had the word "Kush" on it; and (7) based on his experience, Det. Saliba knows that the word "Kush" is slang for marijuana and cut vacuum sealed bags are used to transport narcotics. The affidavit specified that the detectives were able to retrieve the trash while standing on the road and there were no fences or other barriers impeding their ability to do so. The affidavit described the residence as being "occupied by or under the control of Jose Antonio Morales" but did not specify how this information was known.

The warrant was signed on June 1, 2018 and executed on June 8, 2018. Defendant was not at home when the officers arrived, but his girlfriend was there with several minor children. Before arriving at the house, Defendant spoke to police on the telephone and admitted that marijuana found inside the home belonged to him. Defendant was not advised of his *Miranda* rights during the phone call. When he arrived at the house, however, he was advised of his *Miranda* rights, acknowledged that he understood those rights, and agreed to speak with police. He then made further incriminating statements to police.

During the search, law enforcement found over a kilogram of marijuana, less than one gram of cocaine, a digital scale, plastic baggies, multiple marijuana grinders and pipes, a firearm and over seventy-five rounds of ammunition in Defendant's residence. A federal grand jury indicted Defendant on charges of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C § 922(g)(1), and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D).

Defendant now moves to suppress all evidence found inside his residence and his statements to police. He argues that Det. Saliba's affidavit contained false or misleading statements and the affidavit failed to establish probable cause to search his residence. He also contends that his statements to police should be suppressed because he was not advised of his *Miranda* rights during the telephone call with law enforcement and because his statements are "fruits of the poisonous tree," in that they were made pursuant to an illegal search.

## LEGAL ANALYSIS

### A. No *Franks* Hearing is Required

Affidavits supporting search warrants are presumptively valid. In *Franks v. Delaware*, 438 U.S. 154, 171 (1978), the Supreme Court set out the standard for considering an attack on the veracity of an affidavit supporting a search warrant. The Supreme Court stated:

> To mandate an evidentiary hearing, the challenger's attack <u>must be more than conclusory and be supported by more than a mere desire to cross-examine</u>. There must be allegations of deliberate falsehood or reckless disregard for the truth, and those <u>allegations must be accompanied by an offer of proof</u>. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits of sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Id.* at 171–72 (emphasis added). Once these requirements are met, a court then considers whether, "when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Id.* If so, no evidentiary hearing is required. If not, the defendant is entitled to a hearing. *Id.*; *see also United States v. Cross*, 928 F.2d 1030, 1040 (11th Cir. 1991) (to merit an evidentiary hearing on a *Franks* claim, a defendant must make a substantial preliminary showing that (1) the affiant deliberately or recklessly included false statements in the affidavit and (2) the misrepresentation was essential to the finding of probable cause).

Defendant contends in his motion that Det. Saliba intentionally or recklessly included false or misleading information in the search warrant affidavit. Defendant claims that two specific portions of the affidavit were false, namely (1) Det. Saliba's sworn statement that marijuana was found inside a plastic baggie in Defendant's trash on May 15th and (2) Det. Saliba's sworn statement that multiple plastic baggies were found in Defendant's trash on May 18th. When asked for an offer of proof or a substantial showing that these statements were false, however, Defendant only complains that the affidavit did not explain why the officers were searching Defendant's trash in the first place and did not include pictures showing marijuana *inside* a plastic baggie or more than one plastic baggie. This complaint does not constitute the "substantial preliminary showing" needed to warrant a *Franks* hearing. Conclusory allegations and a desire to cross examine to find out more information (such as why the trash pulls were conducted in the first place) do not suffice, and a lack of photographs depicting some of the items discussed in the affidavit does not imply that any statements were false. Defendant has failed to make the concrete substantial preliminary showing required to merit a *Franks* hearing.

As such, Defendant's Motion to Suppress based on false or reckless statements in the affidavit should be denied without a hearing.

At oral argument, defense counsel claimed for the first time that Det. Saliba intentionally omitted information bearing on probable cause from the affidavit. As an offer of proof, counsel proffered that Defendant's girlfriend would testify about a vacant lot next to the residence where teenagers play sports, hang out, and often smoke marijuana. Given the proximity of Defendant's trash to this vacant lot, counsel argued that someone else could have thrown marijuana cigarettes or baggies into Defendant's trash can. Because the warrant was based solely on evidence of marijuana and baggies found in Defendant's trash, this information would have been critical to the state judge's determination of probable cause.[2]

*Franks* applies to information omitted from warrant affidavits as well as statements or misrepresentations. A warrant affidavit violates the Fourth Amendment when it contains omissions "made intentionally or with a reckless disregard for the accuracy of the affidavit." *Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997) (quoting *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980)). "A party need not show by direct evidence that the affiant made an omission recklessly. Rather it 'is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself.'" *Id.* Omissions that are negligent, insignificant or immaterial do not violate the Fourth Amendment. *Id.* "Indeed, even intentional or reckless omissions will

---

[2] Generally, a party may not wait until oral argument to raise an argument for the first time. *See, e.g., In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) (concluding "[a]rguments not properly presented in a party's initial brief or raised for the first time in a reply brief are deemed waived."); *see also Flamenbaum v. Orient Lines. Inc.*, No. 03-22549, 2004 WL 1773207, at *14 (S.D. Fla. July 20, 2004) (declining to address an argument not raised in the initial brief); *Greenhorn v. Marriott Int'l, Inc.*, 258 F. Supp. 2d 1249, 1263 (D. Kan. 2003) (refusing to rule on an issue raised for the first time in a reply brief); *Coleman v. B-G Maint. Mgmt. of Colorado, Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997) (declining to address issues not raised in the opening brief). The undersigned nevertheless addresses counsel's newly raised argument because it has relevance to the legality of the search.

invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Id.* (citing *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990), *cert denied*, 498 U.S. 901 (1990)).

In this case, Det. Saliba obtained the search warrant based solely on evidence of small amounts of drugs and drug paraphernalia found during trash pulls from a garbage can located at the front northwest edge of Defendant's property. If Det. Saliba knew prior to swearing to the warrant affidavit that other people not related to the residence frequently used the empty lot adjacent to the residence to hang out and use drugs, that would have been directly relevant to whether smoked marijuana cigarettes and plastic baggies found in Defendant's trash can came from inside Defendant's residence or from a passerby. Given the relevance of this alleged omission to the issue of probable cause, this Court allowed inquiry of Det. Saliba at the January 7, 2019 hearing limited to this issue. Det. Saliba testified that there is a vacant lot on the west side of Defendant's property, but he has never seen and is not aware of people playing sports, hanging out, or using drugs there.[3] Det. Saliba also testified that the drug evidence found during the trash pulls was located inside large plastic bags (similar to Hefty-brand garbage bags) that were in Defendant's garbage can. These large plastic Hefty bags were closed with the marijuana baggie(s) and smoked marijuana cigarettes inside. In other words, the baggies and cigarettes were not loose inside the garbage can as though a person walking by had tossed them in alongside closed garbage bags from the residence. Based on this testimony, Det. Saliba cannot be said to have intentionally neglected to include information about people doing drugs at the vacant lot next door in his affidavit since he was not aware of this information. Further, the

---

[3] During the hearing on Defendant's Motion to Suppress, the parties agreed to admit a Google map which shows the vacant lot to the west of Defendant's property [D.E. 36-6]. The parties also agreed to admit Exhibits Two through Five, which are photographs of the contents of the trash pull [D.E. 36-2; D.E. 36-3; D.E. 36-4, D.E. 36-5]. The photographs are the same as those attached to Defendant's Motion [D.E. 26].

location of the drug evidence inside closed garbage bags made it reasonable for Det. Saliba to believe it came from inside the property to be searched and not from any other source. Under these circumstances, Defendant has failed to carry his burden of showing that alleged omissions relating to the vacant lot next door were either deliberate or reckless. Therefore, Defendant's *Franks* challenge fails.

### B. The Search of Defendant's Residence was Supported by Probable Cause

"The Fourth Amendment requires that a search warrant be issued only when there is probable cause to believe that an offense has been committed and that evidence exists at the place for which the warrant is requested." *United States v. Betancourt*, 734 F.2d 750, 754 (11th Cir. 1984); *United States v. Strauss*, 678 F.2d 886, 892 (11th Cir. 1982). Probable cause requires "a fair probability" that evidence of a crime will be found in a particular place. *United States v. Mitchell*, 503 F. App'x 751, 754 (11th Cir. 2013) (citing *United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir.2009)). It involves probabilities and practical considerations, not technical precision. *Illinois v. Gates*, 462 U.S. 213, 231 (1983). "Probable cause exists if facts within the magistrate's knowledge and of which he had reasonably trustworthy information would warrant a man of reasonable caution in the belief that a crime was committed and that evidence is at the place to be searched." *Strauss*, 678 F.2d at 892. Great deference is accorded to the determination of probable cause made by the judge who issued the warrant. *United States v. Gonzalez*, 940 F.2d 1413, 1419 (11th Cir. 1991) (citing *Gates*, 462 U.S. at 238–39). A judge's finding of probable cause "is conclusive absent arbitrariness." *Betancourt*, 734 F.2d at 754; *Strauss*, 678 F.2d at 892.

Defendant argues that the facts presented in the warrant affidavit would not "warrant a man of reasonable caution" to believe that evidence of a crime would be found in the place to be

searched in this case. Specifically, he complains that the affidavit (1) did not include photographs of the location of the trash bins prior to the trash pulls, (2) did not indicate that any address was written on the trash bins, (3) failed to specify why detectives were conducting trash pulls at the residence in the first place (for example, whether their decision to do so was based on information from an anonymous tip or confidential informant, law enforcement surveillance or Defendant's prior drug history), and (4) failed to describe how Defendant was linked to the residence involved (for example, by alleging that mail addressed to Defendant or to the residence was found during the trash pulls).

This Court agrees that the affidavit at issue here provides no evidence connecting the place to be searched with criminal activity other than small pieces of marijuana, a few "burnt marijuana blunts," and plastic baggies found during two trash pulls conducted three days apart. That is the only evidence provided in the affidavit that cannabis was being "used, stored or sold" at the residence.

It is well established that trash pulls yielding small amounts of illicit drugs or drug paraphernalia, at least when coupled with other evidence, can establish probable cause for the issuance of a warrant. *See Mitchell*, 503 F. App'x at 754 (upholding district court's finding of probable cause based on two trash pulls, a tip that the defendant was involved in a drug-related shooting and the defendant's prior drug-related arrests); *United States v. Akel*, 337 Fed. App'x 843, 858 (11th Cir. 2009) (upholding a probable cause finding based on a trash pull in which marijuana cigarettes and plastic baggies containing marijuana residue were found and the defendant's involvement in two controlled drug buys); *United States v. Vernon*, 2013 WL 1775065 (M.D. Fla. 2013) (finding probable cause based on an anonymous tip about drug trafficking at the residence, surveillance, and two trash pulls yielding marijuana cigarettes, clear

plastic baggies with marijuana residue and mail connecting defendant to the residence); *United States v. Hill*, 2011 WL 2112517 (N.D. Fla. 2011) (finding probable cause based on informants' statements identifying the defendant as a drug source, surveillance, defendant's prior drug convictions, and trash pull revealing small amount of marijuana). What is less clear, however, is whether small amounts of drugs found during a trash pull is sufficient **without any other evidence** to establish probable cause. The Eleventh Circuit has not specifically addressed this issue, but case law from other circuits provides helpful guidance. In *United States v. Briscoe*, 317 F.3d 906, 907 (8th Cir. 2003), the Eighth Circuit upheld a warrant issued based solely on marijuana seeds and stems found in the defendant's garbage. The Court noted that "not only does the presence of discarded marijuana stems and seeds reasonably suggest that ongoing marijuana consumption or trafficking is occurring within the premises, but the simple possession of marijuana seeds itself is a crime under both federal and state law." *Id.* at 908. In contrast, the Sixth Circuit held in *United States v. Abernathy* that a small amount of marijuana and drug paraphernalia found in the defendant's trash was "insufficient, standing alone, to create probable cause to search" the defendant's residence. 843 F.3d 243, 255–57 (6th Cir. 2016). The Sixth Circuit reached this conclusion for two reasons. First, "the connection between the small amount of marijuana paraphernalia recovered from defendant's garbage and his residence is too logically attenuated to create a fair probability that more drugs were inside the residence." *Id.* at 255. Second, the Court said it was impossible to know when the marijuana had been placed in the garbage. *Id.* The Sixth Circuit distinguished *Briscoe* on the basis that it involved "a large quantity of drug refuse," which "suggests repeated and ongoing drug activity in the residence and therefore creates a fair probability that more drugs remain in the home." *Id.*

Probably the most factually similar case to this case is the Seventh Circuit's decision in *United States v. Leonard*, 884 F.3d 730 (7th Cir. 2018). There, the Court considered whether probable cause to search a residence existed based on two trash pulls conducted a week apart. Both times, the trash bags seized tested positive for trace amounts of marijuana.[4] Law enforcement obtained a warrant based on these results. Upon execution of the warrant, police found drugs and a firearm in the defendant's home. The defendant moved to suppress, and the trial court concluded that two positive tests showing trace amounts of cannabis were enough, standing alone, to support the warrant. On appeal, the Seventh Circuit reviewed *Briscoe* and *Abernathy*, and concluded that both cases supported the assertion of probable cause under the facts at hand:

> While one search turning up marijuana in the trash might be a fluke, **two indicate a trend**. Whether it be a particular quantity of drugs, as in *Briscoe*, or multiple positive tests of different trash pulls within a fairly short time, both tend to 'suggest[] repeated and ongoing drug activity in the residence,' *Abernathy*, 843 F.3d at 255, and 'create[] a fair probability that more drugs remain in the home[,]' *id.* So long as the drugs were contained in trash bags bearing sufficient indicia of residency, this is all that is necessary to establish probable cause and obtain a search warrant. We conclude that two trash pulls taken a week apart, both testing positive for cannabis, are sufficient standing alone to establish probable cause for a search warrant.

*Leonard*, 884 F.3d 734–35 (emphasis added).

*Raulerson v. State of Florida* provides further support for finding probable cause in this case. 714 So. 2d 536, 537 (Fla. Dist. Ct. App. 1998).[5] In *Raulerson*, the Fourth District Court of Appeal of Florida held that a small amount of marijuana found during a single trash pull was not

---

[4] The trash pulls in *Leonard* were prompted by a tip from a confidential source that later turned out to be unreliable. 884 F.3d at 735.

[5] The undersigned notes that the *Raulerson* case provides binding precedent for the judge who signed the warrant in this case since St. Lucie County is within the jurisdiction of the Fourth District Court of Appeal of Florida.

10 of 14

sufficient to establish a fair probability that marijuana would be located inside a residence. The court distinguished a case finding probable cause based on two trash pulls conducted within a week of each other, however, because that suggests a "pattern of continuous drug activity." *Id.* at 537 (distinguishing *State v. Jacobs*, 437 So.2d 166, 168 (Fla. Dist. Ct. App. 1983), *rev. dismissed*, 441 So.2d 632 (Fla. 1983)). The holdings in *Leonard* and *Raulerson* suggest that, while small amounts of drugs uncovered in a single trash pull may not be enough, drug evidence found over the course of multiple trash pulls is sufficient to establish probable cause. That other cases provide additional evidence linking the place to be searched with drug related activity does not mean the facts here are insufficient. The issuing judge in this case could, without arbitrariness, find probable cause to believe that items connected with the use, possession and/or sale of marijuana were located within the residence based on the evidence found during the two trash pulls. Thus, the undersigned concludes that the warrant was supported by probable cause.

### C. The Good Faith Exception Applies

Even assuming *arguendo* that the warrant was not supported by probable cause, the good faith exception established in *United States v. Leon*, 468 U.S. 897 (1984) is applicable here. Under the good faith exception, although evidence seized illegally ordinarily may not be used by the government in a subsequent criminal prosecution, "courts should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002). Where a search warrant has been issued, the question becomes whether the officers executing the warrant relied in good faith on the issuing judge's determination of probable cause. *Mitchell*, 503 F. App'x at 755 (citing *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998)). The good faith exception applies in all but four circumstances:

> (1) Where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role" ...; (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid."

*Martin*, 297 F.3d at 1313 (quoting *Leon*, 468 U.S. at 923). Whether these circumstances apply depends on the totality of circumstances surrounding issuance of the warrant. *United States v. Accardo*, 749 F.2d 1477, 1481 (11th Cir. 1985).

Defendant has not set forth any evidence to support finding one of these four circumstances present here. His only evidence that information in the affidavit was misleading or false is the fact that he did not receive photographs showing raw marijuana inside a plastic bag or depicting multiple plastic baggies. As explained above, a lack of photographs does not imply or suggest false statements were made in the affidavit. Further, it cannot be argued that the affidavit lacked any indicia of probable cause when both state and federal appellate courts have held that multiple trash pulls yielding small amounts of drug evidence can, without more, constitute probable cause. Defendant makes no argument as to the other factors and they do not apply here. Once the judge signed the warrant, law enforcement had no reason to believe the warrant was not valid. The officers had an objectively reasonable belief that they had probable cause to search the target residence for evidence of drug violations pursuant to a valid search warrant. Defendant has not pointed to anything in the record suggesting otherwise. Therefore, even if the affidavit did not present sufficient facts to show probable cause to search, the good

faith exception applies. The undersigned recommends that physical evidence seized from Defendant's residence should not be suppressed.

### D. Defendant's Statements to Police Should Not be Suppressed

Lastly, this Court finds no merit in Defendant's argument that his statements to the police should be suppressed because he was not advised of his *Miranda* rights while he was on the phone with law enforcement. It is settled law that the right to *Miranda* warnings attaches when custodial interrogation begins. *United States v. Acosta*, 363 F.3d 1141, 1148 (11th Cir. 2004). A defendant is "in custody" for *Miranda* purposes when "there has been a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *United States v. Brown*, 441 F.3d 1330 (11th Cir. 2006) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). Defendant cannot credibly argue that he was not "in custody" when he was on the telephone with the police. He had not arrived at the residence yet and he was free to end his telephone conversation with law enforcement at any time. Thus, no *Miranda* warnings were required.

There is also no reason to suppress statements made by Defendant once he arrived at the house. At the hearing on January 7, 2019, both parties confirmed that once he arrived at the house Defendant was advised of and waived his *Miranda* rights prior to talking with the police. In addition, given the undersigned's recommendations regarding the validity of the search warrant and applicability of the good faith exception, the fruit of the poisonous tree doctrine does not apply.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant's Motion to Suppress [D.E. 26] be denied. In light of the approaching calendar call, the parties shall have **six (6) calendar days** from the date of this Report and Recommendation within which

to file objections, if any, with the Honorable Robin L. Rosenberg, the United States District Judge assigned to this case. Pursuant to Federal Rules of Criminal Procedure Rule 59(b)(2), failure to file objections timely waives a party's right to review and bars the parties from attacking on appeal any legal rulings and factual findings contained herein.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 9th day of January, 2019.

SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE